## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT H. MAJOR, JR., et al.**<br><br>**Plaintiffs,**<br><br>v.<br><br>**PLUMBERS LOCAL UNION NO. 5 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICE OF THE PLUMBING AND PIPE-FITTING INDUSTRY OF THE U.S. AND CANADA, AFL-CIO, et al.**<br><br>**Defendants.** | Civil Action No.  03-0009 (JDB) |

## <u>MEMORANDUM OPINION</u>

In this case brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e <u>et</u> <u>seq.</u>, ten plaintiffs allege a pattern and practice of discrimination against African-American and female union members.  <u>See</u> Third Am. Comp. ¶ 1.  Plaintiffs Jerome B. Treadwell ("Treadwell"); Michael R. Seasay ("Seasay"); Tracy L. Barringtine ("Barringtine"); Anthone L. Hood ("Hood"); Robert H. Major, Jr. ("Major"); Roger Harley, Sr. ("Harley"); Tyrone Hagan ("Hagan"); Terrence Hughes ("Hughes"); Eliza Hunter ("Hunter"); and Lee S. Walker ("Walker") are alleged to be, or to have been, journeyperson plumbers or apprentices in the plumbing and pipefitting industry.  The defendants are the Plumbers Local Union No. 5 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("the Union"); the Mechanical Contractors District of Columbia Association, the bargaining agent for the mechanical

contractors; the Joint Plumbing Apprentice and Training Committee ("JATC"); and six

contractors who regularly hire union members, John J. Kirlin, Inc. ("Kirlin"), The Poole & Kent

Corp. ("Poole & Kent"), Giant Food Stores, Inc. ("Giant"), Pierce and Associates ("Pierce"),

Cornell A.E.C., and Parker-Kirlin Joint Venture, Inc. ("Parker-Kirlin JV") (collectively

"contractors").  In the Third Amended Complaint, plaintiffs bring four counts against defendants,

alleging disparate treatment "in hiring, assignments, layoffs, pay, discipline, terms of employment,

and training," disparate impact from defendants' "facially neutral system of selection," a hostile

work environment, and retaliation.  See Third Am. Compl. ¶¶ 116-119.

Presently before the Court are defendants' motions brought pursuant to Fed.R.Civ.P.

12(b)(6) seeking dismissal of plaintiffs' claims on a variety of grounds.[1]  Although each

defendant's motion is particular to each plaintiff, defendants raise four common arguments:

plaintiffs have failed to exhaust administrative remedies; plaintiffs' claims are time barred;

plaintiffs' claims are barred by the equitable doctrine of laches; and plaintiffs have failed to allege

facts that state a claim.  For reasons of efficiency, the Court will first address the defendants'

common arguments before applying them in the specific motions to dismiss.  For the reasons that

follow, the Court will grant in part and deny in part the motions of Kirlin and the Union, and the

Court will grant the motions of Pierce, JATC, Poole & Kent, and Giant.

---

[1]  Although there are nine named defendants, only six have filed motions to dismiss.
Plaintiffs have yet to serve process on defendants Mechanical Contractors District of Columbia
Association and Parker-Kirlin JV.  The action against them shall be dismissed for failure to
prosecute, plaintiff having made no effort at service more than two years after the case was
initiated.  Plaintiffs have filed proof of service on Defendant Cornell A.E.C., but Cornell A.E.C.
has not filed an appearance or any response to the Third Amended Complaint.

# BACKGROUND

Plaintiffs allege that defendants have discriminated against them based on their race by maintaining "a pattern and practice of discriminating against African American union members in the area of referral, selection, hiring, pay, assignment, training, discipline, retaliation, maintenance of a hostile work environment, and other terms and conditions of employment practices."  Third Am. Compl.¶ 1.  Their Complaint follows a 1992 Equal Employment Opportunity Commission ("EEOC") charge of discrimination and a December 1995 EEOC finding of reasonable cause to believe that defendants violated Title VII by maintaining a system of discriminatory employment practices.  Id. ¶ 5.  Thereafter, EEOC attempted and failed to reached a conciliation agreement with defendants.  Id.  In March 1996 EEOC sent notices to defendants regarding the failed conciliation.  Id.  Then the EEOC took the matter under advisement for potential litigation in March 1996, but has never pursued civil litigation against defendants.  The EEOC also did not contact the plaintiffs regarding the failure of conciliation.  In September 2002, plaintiffs requested and received right to sue letters.  Id.

This action was thereafter filed in January 2003 by twenty-five plaintiffs.  Subsequently, some defendants moved for a more definite statement pursuant to Fed.R.Civ.P. 8(a) and 12(e).  On January 9, 2004 the Court granted that motion and ordered plaintiffs to specify "the precise claims of each plaintiff, including the time of any alleged events, and identif[y] which defendants are subject to those specific allegations and resulting claims."  See January 9, 2004 Mem. Op. at 8.  On February 9, 2004 nine of the original twenty-five plaintiffs filed an Amended Complaint.  Plaintiffs then sought leave of the Court to file another amended complaint that would include plaintiff Hughes.  On March 3, 2004 the Court granted leave, and the Third Amended Complaint

was filed, in which ten plaintiffs have brought four counts of employment discrimination against nine defendants.  Six of the nine defendants now move to dismiss plaintiffs' claims, pursuant to Fed.R.Civ.P. 12(b)(6), on a number of grounds.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47.  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Conclusory legal and factual allegations, however, need not be considered by the court.  Domen v. Nat'l Rehabilitation Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

<u>ANALYSIS</u>

Presently six of the nine defendants have brought motions to dismiss before the Court. Although each motion addresses the individual claims of each plaintiff against each defendant, there are certain issues common to the motions, determination of which will expedite the resolution of each defendant's motion.[2]  The common issues are: whether some plaintiffs' claims have been administratively exhausted; whether some claims are barred by the applicable statute of limitations; whether all claims should be dismissed under the defense of laches; and whether paragraph 35 of the Third Amended Complaint is sufficient to state a claim.

**I.      Common Issues**

   A.      <u>Failure to Exhaust</u>

Title VII requires that a plaintiff file a charge with the EEOC prior to bringing suit.  See Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995).  Only after the EEOC has had an opportunity to investigate a complaint and plaintiff receives a right to sue letter is a civil action permissible.  See 42 U.S.C. § 2000e-5(f)(1).  The requirement that a plaintiff first pursue administrative remedies is a mandatory prerequisite to bringing a suit.  See 29 C.F.R. § 1614 et seq.; see also Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir.1997); Brown v. District of Columbia, 251 F.Supp.2d 152, 161 (D.D.C. 2003) ("the exhaustion requirement is mandatory").

Typically, a plaintiff will file an EEOC charge, and then pursue civil litigation after receiving a right to sue letter.  See 42 U.S.C. §§ 2000e-5(e),(f).  In this case, a commissioner of the EEOC, Tony E. Gallegos, filed the administrative charge in 1992.  See Third Am. Compl. ¶ 5.

---

   [2]  This commonality of issues is consistent with plaintiffs' collective response to defendants' individual  motions.

At no time did any of the plaintiffs file a charge with the EEOC.  However, individual plaintiffs can obtain a right-to-sue letter after an EEOC charge is filed if they are "any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(f)(1); see also 29 C.F.R. § 1601.28(b)(ii) (the Commission will issue a right to sue letter "to any member of the class who is named in the charge [filed by a EEOC commissioner], identified by the Commissioner in a third-party certificate, or otherwise identified by the Commission as a member of the class").  In this case, the amended EEOC charge, filed on September 23, 1993 identifies the aggrieved class as "all Blacks who have been, continue to be, or may in the future be adversely affected by the unlawful employment practices."  See Giant Mot., Ex. B.

Plaintiffs allege that they were members of the plumbers' union at the time the EEOC filed its charge, see Third Am. Compl. ¶¶ 6-15, and hence most defendants are not concerned with the threshold question whether there was any exhaustion.[3]  But defendants do take issue with the scope of the EEOC-initiated charge, and argue that some of the claims by plaintiffs that arose after the EEOC completed its investigation in December of 1995 are barred for failure to exhaust administrative remedies.  See, e.g., Poole & Kent Mot. at 8-11; Union  Mot. at 6-7.  Defendants argue that the exhaustion requirement is meant to put an employer on notice and to give the employer an opportunity to pursue resolution with the employee before a suit is brought.  See Johnson v.  Albright, 992 F.Supp.  37, 39 (D.D.C. 1998).  Therefore, defendants argue that they have not received notice of, nor had an opportunity to seek reconciliation on, plaintiffs' claims that

_____

[3] Kirlin is the only defendant that argues that none of the plaintiffs exhausted their administrative remedies because they did not file individual charges with the EEOC.  See Kirlin Mot. at 21-23.  However, under 42 U.S.C. § 2000e-5(f)(1) and 29 C.F.R. § 1601.28(b)(ii) individual plaintiffs may pursue civil actions following an EEOC initiated charge.

arose after the EEOC completed its investigation in December 1995.  See Park v. Howard Univ.,

71 F.3d at 907 (a plaintiff can bring claims that "arise from the administrative investigation that

can reasonably be expected to follow the charge of discrimination").  Plaintiffs contend that under

Loe v. Heckler, 768 F.2d 409, 420 (D.C. Cir. 1985), a plaintiff need not exhaust administrative

remedies if the charge identified "a pattern of on-going discrimination."  Accordingly, as long as

defendants were on notice from the original charge, plaintiffs can pursue all their claims.  See

Treadwell, et al. Opp. at 19-20.

      However, there are two flaws in plaintiffs' arguments.  First, the scope of an EEOC charge

and investigation is not limitless.  From the time the EEOC filed its charge on May 6, 1992 to the

EEOC decision that issued on December 7, 1995, it can be said that all defendants were on notice

of the charges against them, and had the opportunity to enter into conciliation with EEOC.  But

the December 7, 1995 decision outlined the various charges of discriminatory employment

practices allegedly used by defendants.  The subsequent conciliation efforts were unsuccessful,

and the EEOC informed defendants as such on March 7, 1996.  After that point, defendants were

no longer on notice for subsequent complaints, nor given the opportunity to seek conciliation as to

any such charges.  If the EEOC itself had brought this litigation, it certainly could not pursue

allegations of discrete acts of discrimination arising in 2003, for example.  See EEOC v. Crown

Liquors of Broward, Inc., 503 F.Supp. 330, 333 (S.D. Fla. 1980) ("the Commission may not sue

on a complaint broader in scope than the results of its investigation as contained in its reasonable

cause determination").

      Equally true, when an individual files an EEOC charge and then brings a subsequent civil

action, the scope of the civil action is generally limited to those complaints asserted in the EEOC

charge.  See Johnson, 992 F.Supp. at 39 (an employee cannot maintain an action that was never

presented to an agency for consideration); Higbee v. Billington, 246 F.Supp.2d 10, 16 (D.D.C.

2003) (holding that charge for failure to promote in 1993 did not exhaust administrative remedies

for claims of failure to promote arising in subsequent years).  Only in a rare circumstance can a

plaintiff bring new claims in a civil action that were not raised in the initial EEOC charge, or any

subsequent EEOC charge.  See Webb v. District of Columbia, 864 F.Supp. 175, 184 (D.D.C.

1994) (plaintiff's claims arising after EEOC investigation did not have to be administratively

exhausted where plaintiff provided notice to defendant by lodging formal and informal

grievances); Nealon v. Stone, 958 F.2d 584, 590 (4th Cir.1992) (noting that in "all other circuits"

plaintiffs do not need to file an EEOC charge for a claim of retaliation arising out of the initial

EEOC charge).  But here plaintiffs have not provided notice to the defendants of the individual

charges, nor are plaintiffs bringing retaliation claims arising out of the initial filing of the EEOC

charge.

    Another problem with plaintiffs' position is that for discrete acts of discrimination the

analysis of Loe v. Heckler has been called into question.  See Bowie v. Ashcroft, 283 F.Supp.2d

25, 34 (D.D.C. 2003).  In particular, the broad language of  Nat'l R.R. Passenger Corp. v. Morgan,

536 U.S. 101 (2002), which prohibits recovery for discrete acts of discrimination outside the

statutory time limits, would prohibit a plaintiff from bringing new claims based of discrete acts of

discrimination into court without first pursuing administrative remedies.  See  Bowie, 283

F.Supp.2d at 34; Velikonja v. Mueller, 315 F.Supp.2d 66, 74 (D.D.C. 2004).  Therefore, for any

claims based on alleged discrete acts of discrimination occurring after the EEOC investigation

ended on December 7, 1995, plaintiffs would need to have independently exhausted

administrative remedies before asserting those claims in the present suit.

       B.       Applicable Statute of Limitations

Defendants have argued that many of plaintiffs' claims are time barred because they involve incidents that occurred prior to the statutory time period.  See, e.g., JATC Mot. at 3-6.  A person who believes that he has been the victim of racial discrimination must file a charge with the EEOC within 180 days of the adverse employment decision if he is in a "non-deferral state," 42 U.S.C. § 2000e-5(e)(1); or within 300 days of the employer's wrongful conduct if he is in a "deferral state," id.  However, for the 300-day limit to apply, a plaintiff in a deferral state must first initiate a proceeding with the State or local agency having authority to grant the desired relief. Id.; see also Simpkins v. Washington Metropolitan Area Transit Auth., 1997 WL 70239, *3 (D.C. Cir. Oct. 10, 1997) ("Title VII grants a 300-day filing period only when the would-be plaintiff 'has initially instituted proceeding with a State or local agency'") (quoting 42 U.S.C. § 2000e-5(e)(1)). In the present case, the EEOC decision issued on December 7, 1995 indicates that the deferral jurisdictional requirements have been met.  See Third Am. Compl., Ex. 1 at 1.  Therefore, the Court will apply the 300-day filing period.

Application of the statute of limitations for claims of disparate treatment, disparate impact and retaliation is governed by the Supreme Court decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which held that a plaintiff cannot recover for discrete acts of discrimination that occur outside the applicable statute of limitations, even under a theory of continuous violation.  In doing so, the Court noted that each discrete act of discrimination -- i.e., "termination, failure to promote, denial of transfer, or refusal to hire" -- constitutes "a separate actionable 'unlawful employment practice.'"  536 U.S. at 114-15.  However, the Court noted that

the question of a pattern and practice allegation was not presented to the Court.  Id. at 115 n.9.

For hostile work environment claims, Morgan's analysis is inapposite.  See id. at 115-18;

Singletary v. District of Columbia, 351 F.3d 519, 526-27 (D.C. Cir. 2003).  In Singletary, the D.C.

Circuit  held that a hostile work environment claim is different from the discrete claims of

discrimination discussed in Morgan.  According to the D.C. Circuit, as long as one act

contributing to a hostile work environment claim arises within the filing period, the entire series

of acts will be considered in assessing the claim.  Id.  Therefore, plaintiffs' claim of a hostile work

environment may be based in part upon events occurring outside the relevant limitations period, as

the decision in Morgan concluded.  See 536 U.S. at 118.

In the present case, there are two applicable dates.  First, on May 6, 1992 the EEOC filed a

charge against the Union.  Then, on September 29, 1993, the EEOC amended the charge to

include the other defendants in this case.  Because the EEOC decision indicates the deferral state

jurisdictional requirements have been met, the Court will apply the 300 day limit to each of the

dates.  See Third Am. Compl., Ex. 1 at 1; 42 U.S.C. § 2000e-5(e)(1).  Therefore, for plaintiffs

claims to survive against the Union, plaintiffs must allege incidents of discrimination occurring

after July 11, 1991.  Withe respect to plaintiffs' claims against the other defendants, the incidents

forming those claims must have occurred after December 3, 1992.  For any claim of a hostile

work environment, however, plaintiffs need have only pled one timely incident of discrimination

that was part of the hostile work environment claim.

Plaintiffs argue that the EEOC decision established a broad range for timely claims.  The

EEOC decision of December 7, 1995 noted that it covered activity from at least January 1, 1989.

See Treadwell, et al. Opp. at 18.  However, Title VII is very clear with regard to the applicable

filing deadlines, see 42 U.S.C. § 2000e-5(e)(1),  and the statute does not contain a provision

permitting the EEOC to waive the filing deadline requirement.  See Mohasco Corp v. Silver, 447

U.S. 807, 826 (1980) ("strict adherence to the procedural requirements by the legislature is the

best guarantee of evenhanded administration of the law").  Moreover, the Supreme Court in

Morgan was clear that for discrete acts of discrimination claims must be filed within the

applicable statutory period.  536 U.S. at 105.  Finally, it is not apparent that the EEOC intended to

waive the statutory time periods for a civil action by invoking the time back to January 1, 1989,

rather than simply identifying the temporal scope of their investigation.

　　　Plaintiffs also contend that because they have brought pattern and practice claims, the

continuing violation doctrine should serve to maintain all actions as long as there is one timely

claim.  This argument does not enable plaintiffs to establish timely claims.  First, courts in this

Circuit have expressed doubt that an individual can even bring a pattern and practice claim.  See

Murphy v. PricewaterhouseCoopers, LLP, 2004 WL 3168110, *14 (D.D.C.) (plaintiff may not

proceed on a pattern and practice claim in an individual discrimination action); Haynie v.

Veneman, 272 F.Supp.2d 10, 17 n.4  (D.D.C. 2003) (noting the pattern and practice claim

discussed in Morgan is a claim of systemic discrimination against a class of individuals).  Courts

have been wary of plaintiffs transforming what would otherwise be claims of discrete

discrimination into a pattern and practice claim to avoid the statute of limitations and the clear

instructions of Morgan.  See Timothy v. Our Lady of Mercy Med. Ctr., 2004 WL 503760, *3

(S.D.N.Y Mar. 12, 2004) (plaintiff cannot "convert discrete acts into a pattern and practice merely

by invoking those words").  However, before even considering these issues, plaintiffs must

establish a timely pattern and practice claim by showing they have at least one timely claim that is

part of the so-called pattern and practice.  See Haynie, 272 F.Supp.2d at 15 (noting that under the continuing violation theory at least one claim must be within the statutory time period).  In this case, plaintiffs either allege entirely timely claims or entirely time-barred claims, and therefore their pattern and practice argument is inapposite.[4]

C.      Doctrine of Laches

Defendants also raise the threshold defense of laches as a ground to dismiss all claims by all plaintiffs.  The elements of a laches defense are: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Costello v. United States, 365 U.S. 265, 282 (1961); see also Morgan, 536 U.S. at 121.  The burden of establishing the elements of laches is borne by the defendant.  See EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 80-81 (3rd Cir. 1984).

Defendants argue that they have met this burden as a matter of law, based on the unexplained delay of over six years between the time the EEOC completed its investigation and when plaintiffs requested right-to-sue letters.  Plaintiffs have placed the blame for the delay principally on the EEOC for failing to notify plaintiffs that conciliation with defendants had failed.  See Treadwell Opp. at 6.  However, defendants note that many plaintiffs were in contact with the EEOC during the investigation, but then were silent during that six year period.  For example, Seasay stated that he was given "the impression that there was nothing else [he] could do to pursue the case" in early 1996.  Id., Ex. 3 (Declaration of Michael R. Seasay).

_____

[4]  Plaintiffs also argue that equitable tolling should be applied to time-barred claims because of "the EEOC's failures as it relates to the administrative processing of plaintiffs claims." See Major, et. al. Opp. at 8, n.2.  Not only is plaintiffs' argument unclear, but the doctrine of equitable tolling is not applicable to plaintiffs claims that allege acts of discrimination that pre-date, by years, the initial EEOC charge.

Notwithstanding being told the case was over, Seasay did not request a right to sue letter until six years later.  Defendants also argue that they have been prejudiced by the delay.  See, e.g., Kirlin Mot. at 11-16.  Defendants note that memories have faded, records have been lost or destroyed, and key witnesses have retired, been laid off, or died.  Id.

Plaintiffs' six-year delay between the end of the EEOC investigation and their request for right-to-sue letters puts this case squarely within the zone of cases that have applied laches.  See Jeffries v. Chicago Transit Auth., 770 F.2d 676, 681 (7th Cir. 1985) (dismissing a claim filed ten years after the EEOC charge and seven years after the EEOC issued its cause determination); Brown-Mitchell v. Kansas City Power & Light Co., 267 F.3d 825 (8th Cir. 2001) (six-year delay was unreasonable).  However, the circumstances of any delay or the prejudice suffered by the defendant is fundamentally a factual inquiry.  See Great Atlantic & Pacific Tea Co., 735 F.2d at 81.  Because that inquiry requires facts not in the pleadings, it is not appropriate to resolve at this time defendants' laches defense.  See Nat'l Fair Housing Alliance, Inc. v. Prudential Ins. Co. of Am., 208 F.Supp.2d 46, 48 (D.D.C. 2002) (noting that defendant's laches argument is based on facts outside the pleadings, and resolution at the motion to dismiss stage is inappropriate).  Indeed, the case law cited by defendants involved summary judgment actions, not motions to dismiss.  See Jeffries, 770 F.2d at 678 (laches defense brought in a motion for summary judgment); Brown-Mitchell, 267 F.3d  at 826 (same); Fridy v. Moultrie, 595 F.Supp. 34, 35 (D.D.C. 1984) (same).  Therefore, for all claims that survive defendants' motions to dismiss, defendants may raise the defense of laches in a motion for summary judgment after appropriate discovery regarding plaintiffs' reasons for delay and any prejudice suffered by defendants.

D.      Failure to Allege Sufficient Facts

Finally, defendants argue that some plaintiffs have failed to allege sufficient facts to state a claim, notwithstanding this Court's January 9, 2004 decision requiring plaintiffs to allege the specific incidents of discrimination against each plaintiff by each defendant.  Each defendant's motion to dismiss on this ground is unique given the particular facts of each plaintiff's pleading. However, as a governing principle, plaintiffs need not set forth a prima facie case as to each count to survive a Rule 12(b)(6) motion, see Swierkiewicz, 534 U.S. at 997, but they must present facts that would establish the elements of each claim, see Sparrow, 216 F.3d at 1113 (noting that the statement "I was turned down for a job because of my race" would be sufficient for an employment discrimination claim) (quoting Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir.1998)); Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002) ("The Supreme Court's holding in Swierkiewicz v. Sorema did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim.").  Furthermore, this Court's previous decision required plaintiffs "to match specific factual allegations as to a particular plaintiff with specific legal claims against an identified defendant."  Jan. 9, 2004 Mem. Op. at 7.

On this issue, plaintiffs argue that paragraph 35 of the Third Amended Complaint is sufficient to survive defendants' motions to dismiss for failure to state a claim, even where an individual plaintiff makes no specific allegations against a particular defendant.  See Treadwell, et al. Opp. at 11-12.  In paragraph 35, all plaintiffs allege that they "were discriminated against by the job referral and selection system used by Defendant Union and all the Defendant contractors to hire plumbers, " and that defendants manipulated the "out-of-work list" so that plaintiffs were not referred for jobs "despite being higher on the list than the white plumbers."  Paragraph 35 also

-14-

alleges that defendants filled jobs by name requests, self-referral, and word-of-mouth, which are facially neutral but have "a disparate impact on African American plumbers," and that, but for defendants' discriminatory scheme, plaintiffs would have received more job opportunities.

However, paragraph 35 of the Third Amended Complaint still does not identify any specific plaintiffs or defendants.  Moreover, it does not contain any specific factual allegations such as when a particular plaintiff worked for a particular defendant or how a particular plaintiff was discriminated against by a particular defendant.  Thus, paragraph 35, by itself, is insufficient to state a claim by a plaintiff against one of the defendants and survive a Rule 12(b)(6) motion to dismiss.  See Jan. 9, 2004 Mem. Op. at 8 (requiring an amended complaint that states "the precise claims of each plaintiff, including the time of any alleged events, and identifies which defendants are the subject of those specific allegations and resulting claims of each plaintiff").

## II.    Defendants' Motions to Dismiss

The following discussion will address each defendant's motion to dismiss, applying the above principles to the specific arguments raised by each defendant and the pleadings of each plaintiff.

### A.    John J. Kirlin, Inc. ("Kirlin")

Kirlin moves to dismiss plaintiffs' claims on a number of grounds -- timeliness, failure to state a claim, and laches.  Taking those arguments in turn, the Court will grant Kirlin's motion to dismiss the claims of Treadwell, Seasay, Barringtine, Major, Hagan, Hughes, and Hunter.  Kirlin's motion to dismiss the claims of Hood, Harley, and Walker is denied without prejudice to renewal in order to raise the defense of laches after discovery.

Kirlin first argues that some plaintiffs' claims are time barred under 42 U.S.C. § 2000e-

5(e)(1).  See Kirlin Mot. at 17.  According to Kirlin, Treadwell, Seasay, Barringtine, Major,

Hagan, and Hughes have not alleged a single incident of discrimination committed by Kirlin after

July 11, 1991.[5]  Id. at 18-19. The Court agrees that none of these plaintiffs allege timely claims

and their complaints must be dismissed on that basis.

Seasay alleges that he worked as an apprentice for Kirlin in 1989 or 1990, and was

discriminated against by Kirlin.  Third Am. Compl. ¶ 44.  Barringtine alleges he worked for Kirlin

on four or five jobs between 1982 and 1986.  Id. ¶ 53.  Barrington included a number of specific

instances of discrimination committed by Kirlin, but all those events occurred during the 1982 to

1986 time period.  Id.  Major alleges he worked for Kirlin in 1986 and that he was relegated to a

"pusher" doing menial jobs and ultimately fired.  Id. ¶ 76.[6]  Hagan alleges he was discriminated

against by Kirlin when he worked for Kirlin between 1987 and 1990.[7]  Id. ¶ 86.  Hughes alleges

---

[5]  To resolve in plaintiffs' favor any doubts regarding the question of relation back for
purposes of calculating the appropriate statutory time limitations, Kirlin applies the 300-day filing
requirement to the date of the original EEOC charge filed against the Union.

[6]  Major also alleges that at an unspecified time he worked for Parker-Kirlin JV and was
retaliated against for his refusal to participate in the contractor's discriminatory scheme.  Id. ¶ 82.
However, Parker-Kirlin JV, notwithstanding the similar name to Kirlin, is listed in Major's
Complaint as an independent defendant.  While the Third Amended Complaint glosses over the
differences between Kirlin and Parker-Kirlin JV by attempting to use them as substitutes, Major has
not established they are in fact the same entity.  Moreover, Major's claim against Parker-Kirlin JV
fails to specify the date of the alleged retaliation and therefore could not be used to state a claim
against Kirlin in any event.

[7]  Hagan, like Major, also makes allegations of discrimination against Parker-Kirlin JV.
Id. ¶ 88.  However, Hagan pled with sufficient specificity as to those incidents, alleging that the
discrimination occurred in 1991.  See Third Am. Compl. ¶ 88.  Notwithstanding this specificity,
Hagan's claim against Parker-Kirlin JV has two problems.  First, and most importantly, Hagan has
not established Kirlin and Parker-Kirlin JV are the same entity so that claims against Parker-Kirlin
JV are attributable to Kirlin.  Second, Hagan's allegation of discrimination occurring in 1991 is
time barred.  Even though Kirlin uses the July 11, 1991 filing deadline, because the charge against
both Kirlin and Parker-Kirlin JV was filed on September 23, 1993, the applicable filing deadline
is December 3, 1992 for claims against these two entities.  Therefore, Hagan's claim against

that he was employed by Kirlin at a variety of times between 1985 and 1988.  Id. ¶ 103.  Hence, it

is clear from the Third Amended Complaint that none of these plaintiffs have alleged any

incidents of discrimination committed by Kirlin after July 11, 1991, because none contends he

worked for Kirlin after 1990.  Therefore, they cannot state a timely claim under any theory.

The claims of Treadwell are more difficult to resolve.  Treadwell alleges he worked for

Kirlin or Parker-Kirlin JV four times between 1974 and 1997.  See Third Am. Compl. ¶ 38.

However, he alleges that he was discriminated against by Kirlin on only two occasions -- around

1984 and 1987.  Id.  The difficulty here is that the only specific dates alleged by Treadwell, per

this Court's prior decision, are untimely.  He alleges he may have worked for Kirlin during the

relevant time period, but does not state whether or not he was subjected to discrimination during

that time.  Therefore, the failure of Treadwell to allege specific timely incidents of discrimination

forces this Court to dismiss his claims against Kirlin as untimely, and as lacking the necessary

specificity to satisfy this Court's earlier instruction.

Kirlin next argues that Hunter not only failed to allege any timely discrimination, but also

failed to allege he ever worked for Kirlin, or sought employment from Kirlin.  See Kirlin Mot. at

20-21; see also Third Am. Compl. ¶¶ 107-108.  As discussed above, each plaintiff individually

must establish each of his four counts against each defendant.  Furthermore, paragraph 35, by

itself, will not salvage otherwise deficient allegations by a particular plaintiff.  Therefore, Hunter's

claims against Kirlin will be dismissed for failure to allege any facts that would state a timely

claim of discrimination.

Besides the defense of laches, Kirlin does not make any specific arguments with respect to

---

Parker-Kirlin JV arising in 1991 is time barred.

plaintiffs Hood, Harley, and Walker.  Although Kirlin may be able to raise its laches defense again

after discovery, at this time Hood, Harley, and Walker have alleged timely, factually-sufficient

claims, and therefore these plaintiffs' claims against Kirlin survive.

      B.      <u>Pierce and Associates ("Pierce")</u>

      Pierce moves to dismiss plaintiffs' Third Amended Complaint on several grounds --

timeliness, failure to exhaust, failure to state a claim, and laches.  For the reasons that follow,

Pierce's motion to dismiss is granted as to all plaintiffs.  First, Hagan, Harley,and Hughes failed to

exhaust their administrative remedies, as they allege incidents of discrimination occurring

between 1999 and 2001.  <u>See</u> Third Am. Compl. ¶¶ 87 (Hagan alleges he worked for Pierce

around 1999), 93 (Harley alleges he worked for Pierce in 2000 and 2001), 104 (Hughes alleges he

worked for Pierce in 1999).  As discussed above, for claims made after the 1995 EEOC decision,

each claim of discrete discrimination must be independently exhausted.  <u>See</u> <u>Velikonja</u>, 315

F.Supp. 2d at 74 (<u>Morgan</u>'s analysis requiring exhaustion for all allegations of discrete acts of

discrimination is equally applicable to acts occurring prior to the EEOC charge as to those arising

after the charge was filed).

      Pierce also notes that Major, Hunter, Barringtine and Hood failed to allege sufficient facts

to state a claim.  Major alleges that he was employed by Pierce to work at the Library of Congress

and was laid off.  <u>See</u> <u>id.</u> ¶ 78.  However, he fails to specify when the alleged discrimination

occurred.  <u>Id.</u>  In the case of Barringtine, Hood and  Hunter, they all fail to make any allegations

against Pierce, and merely rely on paragraph 35 of the Third Amended Complaint.  <u>Id.</u> ¶¶  51-65,

107-08.  They make no specific allegations of having worked for Pierce, being discriminated

against by Pierce, or even seeking a job with Pierce.  <u>See</u> <u>id.</u>  Therefore, they have failed to allege

facts sufficient to support any of their claims, and the claims of Major, Hunter, Barringtine and Hood against Pierce will be dismissed.

Finally, Treadwell, Seasay, Hagen and Walker's claims must fail as untimely.  According to the Third Amended Complaint, Treadwell alleges that he worked for Pierce around 1985, and was laid off from that job.  See Third Am. Compl. ¶ 40.  Seasay only alleges he worked for Pierce around 1985, but he does not recall being discriminated against while working for Pierce.  Id. ¶46.  Hagan alleges, along with a 1999 claim, that he worked for Pierce in 1987.  Id. ¶ 87.  Walker alleges he worked for Pierce between January 1989 and November 1992.  Id. ¶ 112.  All of these plaintiffs allege incidents of discrimination that occurred before the December 3, 1992 filing deadline and therefore those claims will be dismissed as time barred.

C.      Plumbers Local Union No. 5 ("the Union")

The Union likewise raises a number of grounds to dismiss plaintiffs' claims -- failure to state a claim, failure to comply with the Court's prior decision, failure to state a timely claim, failure to exhaust administrative remedies, and laches.  Addressing the Union's arguments in turn, the Court will grant the Union's motion to dismiss the claims of all plaintiffs except Hughes, Hood and Barringtine.

First, the Union argues that Treadwell, Hagan, Harley, Hunter, and Walker fail to make specific allegations of discrimination.  Examining the Third Amended Complaint, these plaintiffs merely allege the general allegations contained in paragraph 35, which alone are insufficient to state a claim against the Union on any of the four counts brought by these plaintiffs.  See Third Am. Compl. ¶¶ 37 (Treadwell), 84 (Hagan), 90 (Harley), 107 (Hunter), 109 (Walker).  Not one of these plaintiffs made any specific allegations against the Union as required under the Court's

-19-

January 9, 2004 decision.  Although all of these plaintiffs allege they were members of the Union during the applicable time periods, they do not make specific allegations that the Union applied its discriminatory practices against them individually.  Therefore, the claims of Treadwell, Hagan, Harley, Hunter, and Walker against the Union are dismissed for failure to state a claim.

The Union next argues that the claims of Major are both time barred and fail to state a claim.  Major makes numerous allegations of discrimination by the Union.  Id. ¶¶ 69-75.  However, he only provides specific dates of alleged discrimination that fall outside the July 11, 1991 filing deadline.  He alleges that in 1987 the Union ordered him to permit white members of the Union to "sleep it off" but was told to fire African American members for being intoxicated.  See id. ¶ 68.  He also alleges that prior to September 1989 the Union failed to intervene when he was laid off from a job with Best Co.  Id. ¶ 69.  Major further alleges he was laid off from another job on December 14, 1990.  Id. ¶ 71.

Major's additional allegations that the Union failed to stop discriminatory treatment of him at Burns & Cannady and campaigned against him for Business Agent of the Union fail to provide the specific dates these events occurred.  Id. ¶¶ 72-75.  By an Order of this Court, however, Major was required to specify the dates any alleged discrimination occurred.  Not only was this required to put the Union on notice, but it is also necessary to determine whether Major has alleged timely claims.  Therefore, these alleged incidents lack the necessary specificity to state a claim.  Because these are the only allegations made by Major against the Union, all of Major's claims against the Union are dismissed for failure to pled with the necessary specificity and failure to allege timely claims.

The Union next argues that Seasay's claims must be dismissed for failure to exhaust.

As discussed above, for each discrete act of discrimination, a plaintiff must independently exhaust his administrative remedies. See Velikonja, 315 F.Supp.2d at 74. Seasay alleges that he was laid off in 1997 or 1998, and the Union's discriminatory referral process prevented him from getting a new job quickly. See Third Am. Compl. ¶ 43. However, these allegations have never been placed before the EEOC. As such, there is no way in which the Union could have been on notice of these allegations, nor given the opportunity to seek resolution with Seasay. See Johnson, 992 F.Supp. at 39. Because Seasay makes no further specific allegations against the Union, his claims must be dismissed for failure to exhaust administrative remedies.

The Union also argues that its refusal to give Hughes the attendance records of other white plumbers graduating from the Apprentice Program in 1990 is not an unlawful employment practice. See Union Mot. at 14. Although by itself this allegation would likely not support a Title VII claim because it does not involve an actionable adverse employment action, see generally Brown v. Brody, 199 F.3d 446, 455 (D.C. Cir. 1999), Hughes makes additional allegations against the Union. Specifically, he alleges that between 1990 and 1993 he was number one on the Union referral list but was unable to get a job for at least a year. See Third Am. Compl. ¶ 99. This clearly states a timely claim of an adverse employment action against Hughes, and therefore satisfies the requirements of Rule 12(b)(6).[8]

The Union also argues that the allegations by Hood must be dismissed for failure to state a timely claim. Hood alleges that he was laid off by Kirlin sometime in 1991 or 1992. Id. ¶ 62. Subsequently, Hood went on the Union's out-of-work list, but did not receive a job from the

---

[8] Although the allegations by Hughes may not support all counts of his complaint -- e.g., retaliation or hostile work environment -- the Union did not raise those issues in its motion to dismiss.

Union list, so he quit the Union eight months later.  Id. ¶ 59.  Under the applicable filing deadlines

for discrimination claims, Hood must allege incidents of discrimination that occurred after July

11, 1991.  On the face of his complaint, it would appear that Hood has alleged a timely claim

against the Union for discrimination, because he alleges that he remained on the Union's referral

list for eight months after being laid off in 1991 or 1992. Therefore, even if he was fired on

January 1, 1991, he would still be on the Union's referral list after July 11, 1991, and hence can

state a timely claim against the Union's allegedly discriminatory referral process.  However,

Hood's lack of specificity with respect to his claims gives the Court pause.  The Union's motion to

dismiss Hood's claims on timeliness grounds will be denied, but the Union may renew this ground

if it is shown through discovery that Hood's claims are, in fact, not timely.

Although the Union names Barringtine in its motion to dismiss, its only argues that

Barringtine's allegation that the Union knew and approved of contractor discrimination does not

state a claim.  See Union Mot. at 10.  Whether or not such an allegation is sufficient to support

any of Barringtine's claims, Barringtine has made additional timely and sufficiently specific

allegations against the Union that, if true, state a claim.  See Third Am. Compl. ¶ 52 (alleging he

was on the referral list from January 1991 to March 1993 and failed to get a job although white

members listed below him received work).  Therefore, the Union's motion to dismiss Barringtine's

claims is denied.

Each plaintiff makes a generalized allegation that the Union was aware of and condoned

the alleged discriminatory conduct of the defendant contractors.  The Union argues that such a

generalized grievance does not comply with this Court's prior order, and also fails to allege facts

that would state a claim.  See Union Mot. at 9-10.   According to the Union, it did not have an

affirmative duty to ensure compliance with Title VII.  See Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1439 (D.C. Cir. 1988) (stating in dicta that a union may have an affirmative obligation to oppose discrimination in certain circumstances, i.e., where a union accepts and process grievances); EEOC v. Pipefitters Assoc. Local Union 597, 334 F.3d 656,  661 (7th Cir. 2003) (no affirmative duty of the union to "investigate and rectify discrimination").  The only direct obligation that Title VII imposes on the Union is a prohibition from "caus[ing] or attempt[ing] to cause an employer to discriminate against an individual."  42 U.S.C. § 2000e-2(c)(3).

However, regardless of whether there is such an affirmative duty, plaintiffs are obliged to plead sufficiently specific allegations to state a timely claim.  Furthermore, a condonation claim would only be viable for incidents of discrimination by the contractors that are themselves sufficiently specific and timely.  Therefore, the Court need only consider viable claims of the contractors in assessing whether the Union would also be liable for being aware of and condoning such conduct.  The only claims that survive against defendant contractors are the claims of Hood, Harley and Walker against Kirlin.  Hood already has a viable claim against the Union relating to its referral process.  In the Third Amended Complaint, Hood also alleges that the Union was informed about the discrimination by Kirlin, but did nothing to stop it.  Id. ¶¶ 59, 65.  Because Hood has alleged a timely claim of discrimination by a contractor, and alleges that he informed the Union of it, and further alleges that the Union assisted Kirlin in the discrimination, he also has sufficiently alleged such a claim against the Union.  Harley and Walker on the other hand do not make sufficiently specific allegations that the Union assisted in or caused discrimination by the contractor against them.  Nor do they allege facts that could establish an affirmative duty on the

part of the Union to stop such alleged discrimination.  In fact, beyond the general allegation that

the Union knew of and condoned discrimination by the contractors, Harley and Walker neither

provide any specifics to support their general allegation nor allege the Union knew of, condoned,

caused, or assisted in the alleged discrimination by Kirlin.  Id. ¶¶ 90-92, 109, 111.  Therefore, they

cannot sustain such a claim.

D.      Joint Plumbing Apprentice and Training Comm. ("JATC")

JATC moves to dismiss plaintiffs' Third Amended Complaint[9] for timeliness, failure to

obey this Court's Order, failure to state a claim, and standing.  Upon consideration of JATC's

arguments, the Court will grant its motion to dismiss as to all plaintiffs.   JATC argues the claims

of Barringtine, Hagen, Hughes, and Walker are time barred.  See JATC Mot. at 3-6.  JATC notes

that the EEOC charge against it was filed on September 29, 1993, and therefore claims arising

before December 3, 1992 are time barred.  According to the Third Amended Complaint, these

plaintiffs failed to allege any timely incidents of discrimination against JATC.  Barringtine was in

the apprentice class of 1984, and while he makes general allegations of discrimination against

JATC, he does not allege that he suffered discrimination by JATC at any other times.  See Third

Am. Compl. ¶ 55.  Hagen alleges he was enrolled as an apprentice between 1986 and 1990, that

he witnessed the mistreatment of African American apprentices, and that he was laid off to be

replaced by white workers.  Id. ¶ 85.  However, Hagen does not allege any additional acts of

discrimination by JATC that fall within the applicable time period.  Hughes alleges he was

subjected to racial slurs and indignities at a Best Mechanical site while he was an apprentice

between September 1985 and May 1990.  Id. ¶ 101.  Hughes also alleges he complained to Jimmy

---

[9]  Treadwell did not bring any claims against JATC.  See Third Am. Compl. ¶ 36.

Spencer, the Director of the Apprenticeship Program.  Id.  According to Hughes, in response to his complaint JATC suspended him for two weeks without pay.  Id.  However, Hughes does not allege any acts of discrimination by JATC within the applicable time period.  Walker alleges he worked as an apprentice from 1983 to 1989.  Id. ¶ 110.  He contends he was forced to repeat his second year, although comparable absences by whites did not result in repeating a full year of the program, and that he was given demeaning tasks and the evaluation cards for white apprentices were improperly changed while African American apprentices did not receive similar benefits.  Id. None of these allegations are identified as occurring after 1991.  Because the claims of Barringtine, Hagan, Hughes and Walker all occurred before December 3, 1992, they will be dismissed as time barred.

JATC next argues that Hunter's claims are time barred and that he failed to obey this Court's January 9, 2004 Order.  Hunter alleges that he enrolled in the JATC program in 1988 and was "routinely laid off to be replaced by white apprentices."  Id. ¶ 108.  However, Hunter fails to specify whether or not he was laid off within the relevant time period, or even was laid off by JATC at all.  Id.  Therefore, Hunter's claims against JATC are dismissed for failure to plead sufficiently specific facts to state a claim.

For Seasay and Hood, JATC argues they have failed to make any specific allegations against JATC.  See JATC Mot. at 2.  Examining the relevant portions of the Third Amended Complaint, it is apparent that Seasay and Hood fail to make any allegations, beyond those in paragraph 35, against JATC.  See Third Am. Compl. ¶¶ 45-50 (Seasay), 58-65 (Hood).  Because paragraph 35 is insufficient by itself to state a claim against JATC, the claims of Seasay and Hood will be dismissed.

Finally, JATC argues that the claims of Major and Harley should be dismissed because they not only fail to specify the dates of any allegedly unlawful activity, but they also lack standing to bring the claims they do assert.  See JATC Mot. at 6-8.  JATC argues that because Major and Harley only alleged that they "observed" discrimination at JATC, and did not allege they actually suffered any discrimination, they do not have standing to bring their claims.  Id. Constitutional standing under Article III is a threshold jurisdictional inquiry which requires that a plaintiff allege some actual or threatened harm to himself.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 617 (1992); Allen v. Wright, 468 U.S. 737, 751 (1984) (noting "the general prohibition on a litigant's raising another person's legal rights.").

Major alleges that JATC "consistently subjected African American apprentices to disparate application of its expulsion policy."  Third Am. Compl. ¶ 79.  He also alleges that JATC expelled African Americans from the apprentice program for discriminatory reasons.  Id.  The only allegation specific to Major is that "JATC . . . refused to give due consideration to letters journeyman Major submitted on the behalf of expelled African American apprentices regarding the illegitimate discriminatory bases for the expulsions at issue."  Id.  Because of the standing requirements, Major can only bring a claim arising out of JATC's failure to "give due consideration" to his letters.  See Lujan, 504 U.S. at 617.  However, such an allegation does not support the elements of any of Major's four claims.[10]  Furthermore, Major has failed to specify

---

[10]  For a disparate treatment claim, Major must establish 1) that he was a member of a protected class; (2) that he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination.   See Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  Major's second claim is disparate impact, and to establish this claim Major must show that an otherwise facially neutral practice resulted in observed disparities between the racial composition of those qualified and those selected.  See Wards Cove Packing Co. v. Antonio, 490 U.S. 642, 650-53 (1989).  Third, to establish a hostile work environment claim Major must show:

when this alleged event occurred, in contravention of this Court's January 9, 2004 Order.

Similarly, Harley alleges that he observed discrimination by JATC towards other African Americans, which caused him to quit JATC.  See Third Am. Compl. ¶95.  As in the case of Major, Harley's allegations, even if true, would not establish any of the elements of his claim. Additionally, Harley cannot make a claim of employment discrimination based upon the observation of discrimination, because that is not an injury personal to him for standing purposes. See Allen, 468 U.S. at 751.  Finally, to the extent Harley's allegation that he quit JATC upon seeing all the discrimination may state a claim, there are serious timeliness questions.  Harley fails to state the date on which he quit JATC.  Id.  However, earlier in the Third Amended Complaint he is described as being a member of the Union for over 30 years, and having completed the Apprentice program in 1975.  Id. ¶ 12.  If that is an accurate timeframe for when Harley quit JATC, any claim he may have would be time barred.  Furthermore, Harley's failure to allege the specific time he quit JATC also violates this Court's prior decision.  Therefore, his claims will be dismissed against JATC.

E.      Poole & Kent Corp. ("Poole & Kent")

Poole & Kent move to dismiss plaintiffs claims on grounds of failure to state a claim, failure to comply with this Court's prior Order, and failure to exhaust.  For the reasons that follow,

---

(1) he was a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment occurred because of his race; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it.  See Jones v. Billington, 12 F. Supp.2d 1, 11 (D.D.C. 1997), aff'd, 1998 WL 389101 (D.C. Cir. June 30, 1998).   Plaintiffs' claim of retaliation requires a showing that 1) the plaintiff engaged in statutorily protected activity, 2) the employer took adverse employment action, and 3) there is a causal connection between the first two elements.  See Brody, 199 F.3d at 452.

the Court will grant Poole & Kent's motion to dismiss.  First, Poole & Kent argues that Treadwell, Barringtine, Hood, Hagan, Harley, Hunter and Walker fail to allege sufficient facts to state a claim.  <u>See</u> Poole Mot. at 5-6.  Treadwell, Barringtine and Hood never allege they ever worked for Poole & Kent, nor that they ever sought employment at Poole & Kent.  <u>See</u> Third Am. Compl. ¶¶ 42, 54, 64.  Instead these plaintiffs merely allege general discrimination by Poole & Kent by reference to paragraph 35 of the Third Amended Complaint.  <u>Id.</u>  As stated several times, paragraph 35 is by itself insufficient to state a claim.  Hagan, Harley, Hunter and Walker, moreover, fail to make any allegations against Poole & Kent -- not even a general allegation of discrimination in hiring.  <u>See</u> Third Am. Compl. ¶¶ 84-89 (Hagan), 90-98 (Harley), 107-08 (Hunter), 109-115 (Walker).  Therefore, the claims of these plaintiffs will be dismissed for failure to allege facts that could state a claim.

Next, Poole & Kent argue that Major failed to comply with this Court's prior order by not providing the specific date when he was unable to get a job with Poole & Kent because of their alleged discriminatory employment practices.  Major alleges that he attempted to get a job with Poole & Kent at a federal government jobsite in Washington, D.C., but was unable to because he was not permitted to put his name on the official referral sheet.  <u>See</u> Third Am. Compl. ¶ 77.  Although Major has thus alleged a colorable claim against Poole & Kent, he has failed to specify the date of the alleged discrimination.  In the Court's January 9, 2004 Memorandum Opinion, plaintiffs were required to specify "the time of any alleged events."  <u>Id.</u> at 8.  Not only is this requirement necessary to put Poole & Kent on notice and enable it to mount a defense, but there are also questions about the timeliness of Major's claims.  As to every allegation of discrimination for which Major provides a specific date, they all fall outside the applicable time period.  <u>See</u> <u>Id.</u>

¶¶ 66-83 (alleging incidents of discrimination in 1986, 1987, 1989, 1991).  Hence, the Court has continuing concerns about the timeliness of Major's claims against Poole & Kent.  His failure to comply with this Court's order forces the Court to dismiss his claims against Poole & Kent.

Poole & Kent also argues that Seasay and Hughes, who have articulated specific claims of discrimination against Poole & Kent, failed to exhaust their administrative remedies.  See Poole Mot. at 8-10.  Seasay and Hughes allege incidents of discrimination occurring in 2000 and 2003, respectively.  See Third Am. Compl. ¶¶ 48-49, 105.  These incidents occurred well after the EEOC completed its investigation in December 1995, and after it notified defendants that it was ending the conciliations process in March 1996.  Therefore, even if Seasay and Hughes were part of the class to which the EEOC charge applied, that charge cannot be considered to cover claims occurring  in 2000 and 2003.  The exhaustion requirement cannot so easily be put aside in an instance where the defendant did not have notice of a discrete claim of discrimination, or an opportunity to seek reconciliation.  See Johnson, 992 F.Supp. at 39; Velikonja, 315 F.Supp.2d at 74.

F.     Giant Food, Inc. ("Giant")

Lastly, Giant moves to dismiss the claims of all plaintiffs, or in the alternative, for summary judgment, on a number of grounds -- failure to state a claim, timeliness, and failure to comply with this Court's order.  For the reasons that follow, the Court will grant Giant's motion to dismiss.  Giant argues that Barringtine, Hood, Major, Hagan, Harley, Hughes, and Hunter have failed to make any specific factual allegations of discrimination by Giant.  A review of the Third Amended Complaint shows that Barringtine, Hood, Hagan, Harley, Hughes, and Hunter do not allege they ever worked for, sought a job with, or were discriminated against by Giant.  See Third

Am. Compl. ¶¶ 51-65, 84-108.  Barrington and Hood do make a general allegation against Giant

by reference to paragraph 35, but do not allege any specific discrimination.  Id. ¶¶ 54, 64.

Therefore, the claims of these plaintiffs against Giant are dismissed for failure to allege facts

sufficient to state a claim.

        Giant next argues that the claims of Treadwell and Seasay must be dismissed as untimely.

Treadwell alleges that he worked for Giant at a Bethesda, Maryland, location sometime between

1985 and 1990, and was laid off.  Id. ¶ 39.  He also worked at another Giant store in Landover,

Maryland, around 1984 or 1985.  Id.  Treadwell makes no further allegations against Giant.

Seasay alleges that he worked for Giant at a Silver Spring, Maryland, location sometime between

1985 and 1986.  Id. ¶ 46.  He does not make any additional allegations against Giant.  Because

Treadwell and Seasay have alleged incidents of discrimination occurring before the governing

Title VII filing deadline, their claims will be dismissed as untimely.

        Giant argues that the claims of Major and Walker are barred as untimely and for failure to

comply with this Court's earlier order.  Major alleges he was discriminated against by Giant, but

does not provide a date for the alleged discrimination.  See id. ¶ 83.  Likewise Walker alleges he

was discriminated against by Giant when he was laid off in favor of white workers.  Id. ¶ 115.

Walker also alleges he worked for Giant sometime between January 1989 and November 1992.

        Giant argues the lack of specificity surrounding the claims of Major and Walker directly

contravenes the Court's January 9, 2004 order, and their claims should be dismissed on that basis.

Furthermore, Giant presents a declaration of Cynthia Hallberlin ("Hallberlin Dec."), who states

that according to Giant employment records, Walker was hired by Giant on January 21, 1988, laid

off on June 18, 1988, and never subsequently hired.  Hallberline Dec. ¶ 5; see also Giant Mot., Ex.

C.  Hallberlin also declares that Giant employment records show that Major did not work for Giant anytime after January 1, 1988.  Hallberlin Dec. ¶ 6.

Major and Walker did not contest, nor even respond to, Giant's Statement of Material Facts that was included with Giant's motion to dismiss, or in the alternative, for summary judgment, and incorporated the Hallberlin declaration.  Therefore, the facts in Giant's motion for summary judgment are considered not to be in dispute.  Upon those facts, no reasonable jury could find that Major and Walker made timely claims against Giant.

## CONCLUSION

For the above reasons the Court will grant in part and deny in part (without prejudice to refile a laches defense) the motions to dismiss of Kirlin and the Union.  The claims of Hood, Harley, and Walker survive against Kirlin and the claims of Hughes, Hood, and Barringtine survive against the Union.  The Court will also grant the motions to dismiss of Pierce, JATC, Poole & Kent, and Giant in their entirety, and will grant Giant's motion for summary judgment on the claims of Major and Walker.  A separate order will be issued on this date.


_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:   __March 29, 2005_____

Copies to:

Samuel Cartenius Hamilton
Law Offices of Samuel Hamilton
8401 Colesville Road
Suite 620
Silver Spring, Maryland 20910
301-589-3000 (telephone)
301-589-8866 (fax)
E-mail: shamiltonlaw@aol.com

Charles W. Day, Jr.
Gebhardt & Associates
1101 17th Street, Northwest
Suite 607
Washington, D.C.  20036- 4718
202-496-0400 (telephone)
202-496-0404 (fax)
E-mail: billday@covad.net

Joseph D. Gebhardt
Gebhardt & Associates
1101 17th Street, Northwest
Suite 607
Washington, D.C.  20036- 4718
202-496-0400 (telephone)
202-496-0404 (fax)
E-mail: jgebhardt@covad.net
Carey Robert Butsavage
Butsavage & Associates, P.C.
1920 L Street, Northwest
Suite 510
Washington, D. C.  20036
202-861-9700 (telephone)
202-861-9711 (fax)
E-mail: cbutsavage@butsavage.com

Christopher Kip Schwartz
Butsavage & Associates, P.C.
1920 L Street, Northwest
Suite 510
Washington, D. C.  20036
202-861-9700 (telephone)

202-861-9711 (fax)

Ellen O. Boardman
O'Donoghue & O'Donoghue
4748 Wisconsin Avenue, Northwest
Washington, D.C.  20016
202-362-0041 (telephone)
E-mail:eboardman@odonoghuelaw.com

Andrew E. Stephenson
Holland & Knight LLP
2099 Pennsylvania Avenue, Northwest
202-457-7056 (telephone)
202-955-5564 (fax)
E-mail: astephen@hklaw.com

Darryl Leonard Franklin
Venable, Baetjer and Howard, LLP
1202 New York Avenue, Northwest
Suite 1000
Washington, D.C.  20005
202-216-8052 (telephone)
202-962-8300 (fax)
E-mail: dfranklin@venable.com